958 F.2d 368
 140 L.R.R.M. (BNA) 2872
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
GARY ENTERPRISES, INC., Respondent.
 No. 91-2522.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: December 2, 1991
Decided: March 27, 1992
As Amended July 1, 1992.
 
 Jerry M. Hunter, General Counsel, D. Randall Frye, Acting Deputy General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Howard E. Perlstein, Supervisory Attorney, Claude E. Francke, National Labot Relations Board, Washington, D.C., for petitioner.
 Richard E. Hardison, Beckley, West Virginia, for respondent.
 Before SPROUSE and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 In this appeal, the National Labor Relations Board ("the Board") seeks enforcement of an order finding that Gary Enterprises ("employer") violated Sections 8(a)(1) and (4) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (4) (1988), by discharging Jerry Whitaker in retaliation for Whitaker's prior filing of an unfair labor practice charge against employer. The administrative law judge never reached the merits of this case because he found that Whitaker was not an "employee" of employer under 29 U.S.C. § 152(3), but rather was an independent contractor not entitled to the Act's protection. The Board reversed the ALJ's determination that Whitaker was an independent contractor, finding that he fell within the definition of section 2(3).
 
 
 2
 At the outset, we note that employer does not dispute the Board's finding that it unlawfully discharged Whitaker because he had filed an unfair labor practice charge against it with the Board. Rather, employer contends that the Board erred by overturning the ALJ's determination that Whitaker was not its employee and thus not subject to the Act. The parties are thus in agreement that Whitaker's status as either an employee or an independent contractor is dispositive in this case.
 
 
 3
 We must affirm the decision of the Board if it is supported by substantial evidence. National Labor Relations Board v. Tri-State Transport Corp., 649 F.2d 993, 994 (4th Cir. 1981). In addition, the decision of the Board should be upheld if the Board chose between two fairly conflicting views. ARA Leisure Serv., Inc. v. NLRB, 782 F.2d 456, 459 (4th Cir. 1986).
 
 
 4
 Contrary to employer's contention, the Board correctly applied common law agency principles to the determination of Whitaker's employee/independent contractor status. See ARA, 782 F.2d at 459; Air Transit, Inc. v. NLRB, 679 F.2d 1095 (4th Cir. 1982). The analysis focuses on the "right to control" test. ARA, 782 F.2d at 459. As we stated in ARA, " '[w]hen the person for whom services are performed retains the right to control the manner and means by which those services are to be accomplished and particularly when that person provides supervision as to the details of the work, the workers are considered employees.' " Id., quoting Air Transit, 679 F.2d at 1098. Moreover, "[I]t is the right to control, rather than the actual exercise of control, that is significant." ARA, 782 F.2d at 460 ( citing NLRB v. Associated Diamond Cabs, Inc., 702 F.2d 912 (11th Cir. 1983)). Further, under this test the relationship is viewed in its entirety, taking into account numerous factors suggesting either employee or independent contractor status, but recognizing that such factors would only rarely all point in the same direction. ARA, 782 F.2d at 460-61.
 
 
 5
 Examination of the relationship at issue in this case convinces us that the Board rationally found Whitaker to be an employee. Employer operated a coal mine in Gary, West Virginia, which it purchased in 1987 from U.S. Steel, who employed United Mine Workers ("UMW"). At the time of purchase, employer agreed to recognize UMW as the representative of its employees and to staff its facility with a number of employees laid off by U.S. Steel. In December 1987, an arbitrator found that under the collective bargaining agreement, coal could be loaded onto trucks for transportation away from the mine site by independent contractors.
 
 
 6
 Two of the principal owners of the Gary mine, Homer Hopkins and William Smith, also owned a company known as Faith Mining which operated a mine located some sixty miles away from the Gary mine. Whitaker operated an endloader at Faith Mining, where he was also a union member, until his layoff in November 1987 when the mine closed. In January 1988, employer developed a need for an endloader, pursuant to which Smith called Whitaker at home on January 31, 1988, and told Whitaker to drive the endloader at the Faith mine to the Gary mine site.
 
 
 7
 The details of the parties' arrangement were established when Whitaker arrived at Gary. Smith told Whitaker that his job involved moving coal, was temporary, and that he would be paid a flat rate of $100 a day. No deductions were made from his paycheck. He was to come in every weekday morning until told otherwise, and he did so for at least eight hours per day until his discharge in September 1989.
 
 
 8
 In January 1989, Whitaker requested employer to provide him with health insurance at employer's expense. He also, at this time, signed a dues-checkoff authorization card and gave it to the union representative at the mine. He provided employer with a copy of the checkoff. Employer refused the request for insurance, and asked Whitaker to sign a document outlining the terms of their relationship, but Whitaker refused to sign this document.
 
 
 9
 Whitaker filed an unfair labor practice charge against employer on August 14, 1989, alleging that employer had placed him in the status of a contract laborer in retaliation for his filling out an authorization card. Employer was served with the charge on August 22, and on August 28, informed Whitaker that he would not be needed after September 1.
 
 
 10
 We find that virtually all relevant aspects of employer's relationship with Whitaker indicate that he was an employee rather than an independent contractor. Employer certainly controlled the manner and means by which Whitaker performed his services as an endloader. Employer owned, maintained, and fueled the endloader operated by Whitaker. Employer's supervisors told Whitaker which duties to perform and the hours in which he would perform them. Further, the only records Whitaker furnished to employer related to his fuel use and the number of days he worked.
 
 
 11
 Other aspects of the relationship were also consistent with an employer-employee arrangement. The functions Whitaker performed were an essential part of employer's operation, and, although the arrangement was perhaps initially intended to be temporary, Whitaker worked five days a week, for at least eight hours per day, for nineteen months until his discharge. Unlike an independent contractor, Whitaker had no proprietary interest in his work or the power to make decisions affecting profit or loss.
 
 
 12
 These factors, collectively, establish that Whitaker was an employee under the Act. See ARA, 782 F.2d at 459-461; Roadway Pack- age Sys., 292 NLRB 376 (1989); Fort Wayne Newspapers, Inc., 263 NLRB 854 (1982); Standard Oil Co., 230 NLRB 967 (1977). Although the manner in which Whitaker was paid is more commonly associated with independent contractor status, this factor, standing alone, is not dispositive. See ARA, 782 F.2d at 461. See also Mission Foods Corp., 280 NLRB 251 (1986). Further, we agree with the Board that the union's failure to collect dues from Whitaker or file a grievance in his behalf, while consistent with independent contractor status, is also consistent with the possibility that the union viewed Whitaker as a salaried employee doing nonbargaining work. In any event, however, the union's beliefs are not legally controlling and, even if viewed as relevant, cannot outweigh the multitude of factors indicating an employer-employee relationship in this case.
 
 
 13
 Accordingly, we find substantial evidence to support the Board's order and affirm that order. Enforcement is hereby granted.
 
 ENFORCEMENT GRANTED